**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

June 25, 2021

VIA ECF

Hon. Kenneth M. Karas
United States District Judge
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601-4150

Re:   *G-Max Management, Inc. v. State of New York*, No. 7:20-cv-00634

Dear Judge Karas:

I write as Plaintiffs' counsel in this action to apprise the Court of supplemental recent Supreme Court authority relevant to the pending motions to dismiss (Dkt. Nos. 67, 70, 72).

This week, the Supreme Court held, by a 6-3 majority, that a California regulation requiring agricultural employers to permit union organizers to access their property effects a physical taking, even though access was limited to just three hours per day, 120 days per year. *Cedar Point Nursery v. Hassid*, 594 U.S. --- (2021). A copy of the Supreme Court's opinion is attached as Exhibit A.

*Cedar Point* further supports Plaintiffs' claims and undermines key arguments made by Defendants in seeking dismissal here.

First, *Cedar Point* underscores the gravity of the constitutional rights at play here. In particular, the Supreme Court majority emphasized that the "protection of property rights is necessary to preserve freedom and empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." Slip op. 5 (citation and internal quotation marks omitted). That is precisely the protection Plaintiffs seek here, in the face of a draconian New York State law—the HSTPA—that forces property owners to remain in the rental business, subject to what is now a permanent and self-perpetuating rent-regulation regime, and effectively transforms owners' private property into State-sponsored (but not State-funded) affordable housing. *See also* slip op. 16 ("With regard to the complexities of modern society, we think they only reinforce the importance of safeguarding the basic property rights that help preserve individual liberty, as the Founders explained.").

Second, *Cedar Point* buttresses Plaintiffs' physical taking claims. Among other key rulings, the Supreme Court clarified that "a physical appropriation is a taking whether it is permanent or temporary." Slip op. at 10. In doing so, the Court effectively foreclosed Defendants' arguments here that the individual rent-regulated tenancies are insufficiently "permanent" or "absolute" to sustain a physical takings claim. *See, e.g.*, Dkt. 73 at 13; *accord* Dkt. 71 at 16-18 (citing *Harmon v. Markus*, 412 F. App'x 420, 422 (2d Cir. 2011), for the proposition that

June 25, 2021
Page 2

Plaintiffs cannot make out a physical taking claim because "the RSL does not effect a *permanent* physical occupation of . . . property" (emphasis added)).  Indeed, Defendants' crabbed view of physical takings, evident throughout their briefing, *see, e.g.*, Dkt. 68 at 25-26, is unsupportable in light of *Cedar Point*.

Third, *Cedar Point* confirms that, separate and apart from Plaintiffs' *per se* physical takings claims (which are directed specifically at the co-op/condo conversion and owner-occupancy amendments), the HSTPA as a whole sufficiently approximates a direct government appropriation so as to sustain a regulatory takings claim under *Penn Central*.  *See* Dkt. 86 at 28-33.  Indeed, in arguing that *Cedar Point* should have been governed by a regulatory takings analysis, even the three dissenting Justices emphasized that "a 'taking' may *more readily* be found when the interference with property can be characterized as a physical invasion by government"—"or, in other words, when it affects the right to exclude."  Slip. op. of Breyer, J., dissenting, at 9 (emphasis in original) (citation and alteration omitted).  Thus, all nine Justices agree that the right to exclude—a right over which the HSTPA runs roughshod—is central to the takings analysis, even if the Justices split on the proper framework within which to conduct that analysis.  *See also* slip. op. at 7 (majority opinion characterizing the right to exclude as "one of the most treasured rights of property ownership" and deeming infringement of that right to constitute a *per se* taking (citation and internal quotation marks omitted)); Dkt. 86 at 28 (Plaintiffs' motion to dismiss opposition brief arguing that the HSTPA fails the "character of government action" prong of the *Penn Central* test because it "uses 'regulation' as a pretext to . . . eviscerate[] owners' rights to dispose of, exclude others from, and personally use and possess their own property, and it does so in perpetuity and without any corresponding benefit to the property owners who are being forced to bear the cost of the government's affordable housing initiative" (citing Compl. ¶ 230)).

As always, we appreciate the Court's consideration.

Respectfully,

/s/ *Randy M. Mastro*
Randy M. Mastro

Attachment

cc: Counsel for Defendants & Intervenors (via ECF)